IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ARON M. OLINER, et al.,

    Plaintiffs,

v.

JOHN KONTRABECKI,

    Defendant.

BK Adversary Proceeding No. 03-3264 DM
_____/

IN RE: CENTRAL EUROPEAN INDUSTRIAL DEVELOPMENT COMPANY, LLC d/b/a CEIDCO,

    Debtor,
_____/

In re
THE KONTRABECKI GROUP LP,

    Debtor.
_____/

No. C 06-03787 CRB

**MEMORANDUM AND ORDER**

    Now pending before the Court is the motion of John Kontrabecki to withdraw the adversary proceeding to this Court. After carefully considering the papers filed by the parties, and having had the benefit of oral argument, the Court DENIES the motion. As the Court and the parties are familiar with the history of this case, the Court will not repeat the background facts here.

**DISCUSSION**

Bankruptcy judges may "hear and determine" core proceedings upon which the bankruptcy court "may enter appropriate orders and judgments." 28 U.S.C. § 157(b)(1). Judgments in core proceedings are subject to normal appellate review. By contrast, absent consent of the parties, bankruptcy judges may only "hear" non-core proceedings, and are required to submit proposed findings of fact and conclusions of law to the district court for de novo review on timely objection. Id. §157(c)(1); see also In re Cinematronics, Inc., 916 F.2d 1444, 1449 (9th Cir.1990) ("In noncore matters, the bankruptcy court acts as an adjunct to the district court, in a fashion similar to that of a magistrate or special master") (internal quotation marks and citation omitted).

28 U.S.C. section 157 governs the district court's authority to "withdraw the reference" from bankruptcy court to the district court. District courts must withdraw cases which "require material consideration of non-bankruptcy federal law." Security Farms v. International Broth., 124 F.3d 999, 1008 (9th Cir. 1997) (citing 28 U.S.C. § 157(d)). However, district courts may withdraw "any case or proceeding . . . on timely motion of a party, for cause shown." 28 U.S.C. § 157(d). "In determining whether cause exists, a district court should consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." Security Farms, 124 F.3d at 1008.

Bankruptcy courts *may not* conduct jury trials in non-core proceedings where the parties have withheld consent to the final judgment by the bankruptcy court. In re Cinematronics, 916 F.2d at 1451. Thus, if, as Kontrabecki claims, the adversary proceeding is a non-core proceeding and he has properly demanded a jury trial, the Court must withdraw the reference. A threshold issue, then, is whether Kontrabecki has a right to a jury trial.

A.   **Jury Trial**

Kontrabecki never demanded a jury trial on the original Complaint or the Second Amended Complaint. His demand for a jury trial on the Third Amended Complaint entitles him to a jury trial only if new issues are raised in the Third Amended Complaint. See Fed. R.

Civ. P. 38(b); Lutz v. Glendale Union High School, 403 F.3d 1061, 1066 (9th Cir. 2005). "[T]he presentation of a new *theory* does not constitute the presentation of a new *issue* on which a jury trial should be granted." Id. (internal quotation marks and citation omitted). "Rather, Rule 38(b) is concerned with issues of *fact*." Id. If the issues in the original complaint and the amended complaint turn on the same "matrix of facts," the demanding party is not entitled to demand a jury trial on the amended complaint. Id. In Lutz, there was no significant difference between the facts supporting the original claims and the facts supporting the new claims; they both hinged on the same matrix of facts.

Here, the bankruptcy court found that the Third Amended Complaint involves the same matrix of facts as the Second Amended Complaint. Kontrabecki claims the Third Amended Complaint includes the new factual allegation that Lehman Brothers Holdings Inc. ("Lehman") has the right to possession and control of shares representing 100 percent of the equity interests in WDC and OBC as of January 13, 2003 (the day of the share dilution transaction). This is not a new factual allegation at all; rather, it is more in the nature of a theory. In any event, Lehman could have made such an assertion were the case tried on the allegations of the Second Amended Complaint.

Kontrabecki also contends that the Third Amended Complaint claims additional damages based on the three-year lapse of time between the Second Amended Complaint and the Third Amended Complaint. But even without the Third Amended Complaint, Lehman could have put in evidence at trial of how much it has been damaged due to the delay. Kontrabecki was on notice in the Second Amended Complaint that Lehman was seeking compensation for the damages it was suffering as a result of Kontrabecki's share dilution transaction. That those damages have changed during the three years it took to unwind the transaction does not create a new issue in the Third Amended Complaint. Accordingly, Kontrabecki waived his right to a jury trial.

**B.   Core v. Non-Core**

Having determined that Kontrabecki is not entitled to a jury trial, and therefore this Court is not *required* to withdraw the reference, the Court should still decide whether the

3

claims are non-core or core for the purpose of deciding whether to exercise its discretion to withdraw the reference since not withdrawing non-core claims arguably leads to a waste of judicial and other resources.

Claims "that arise under or in Title 11 are deemed to be 'core' proceedings, while claims that are related to Title 11 are 'noncore' proceedings." In Re Harris Pine Mills, 44 F.3d 1431, 1435 (9th Cir. 1995). That is, "'[i]f the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be *related* to the bankruptcy because of its potential effect, but . . . it is an 'otherwise related' or non-core proceeding.'" Id. (quoting In re Wood, 825 F.2d 90, 97 (5th Cir. 1987)).

No exact definition of the term "core" exists in the bankruptcy code; instead, section 157(b)(2) "contains a laundry list of core proceedings along with the admonition that core proceedings include, 'but are not limited to,' the items listed." In re Cinematronics, 916 F.2d at 1450. The list includes two "catch-all" provisions: (1) matters concerning administration of the estate; and (2) other proceedings affecting the liquidation of the assets of the estate. 28 U.S.C. § 157(b)(2)(A), (O).

The bankruptcy judge held that all of Lehman's clams against Kontrabecki, including his state law claims, are core claims:

> [T]he gravamen of Lehman Brothers Holdings Inc.'s claims against Mr. Kontrabecki pertain to his conduct after debtor The Kontrabecki Group Limited Partnership had commenced its Chapter 11 case and while Mr. Kontrabecki was its responsible person. The facts as alleged more closely resemble the situation before the United States Court of Appeals in In re Harris Pine Mills, 44 F.3d 1431 (9th Cir. 1995) . . . than those before the court in In Re Cinematronics, Inc., 916 F.2d 1444 (9th Cir. 1990).
>
> Accordingly, all pending claims in this adversary proceeding will be heard and determined as core matters.

Kontrabecki Request for Judicial Notice, Exh. 48. Kontrabecki concedes that Lehman's claim for violation of the automatic stay is core, but disputes that any of the remaining state law claims qualifies as such. Kontrabecki, again, relies on In re Cinematronics.

4

In <u>Cinematronics</u>, the debtor, Cinematronics, filed for reorganization under Chapter 11 and a Trustee was appointed. After the appointment of the Trustee, Cinamatronics' President, Pierce, was authorized to continue to act as its President. In that capacity he met with another company, ESR, to consider whether to manufacture a video game designed by ESR. In the course of those negotiations, Pierce signed an agreement promising to keep ESR's information about the game confidential. Although Cinematronics ultimately decided not to manufacture the game, ESR later learned that Cinematronics was manufacturing a game which ESR believed was based on its confidential game design. Accordingly, Cinematronics sued Pierce for violation of the confidentiality agreement and other state law tort claims. 916 F.2d at 1446-47. The lower courts held that the claims were core because they arose post-petition.

The Ninth Circuit held that ESR's claims against Pierce were non-core. The court noted that although the claims arose post-petition, and therefore might fall within the two "catch-all" provisions, the court should not so find if to do so would raise constitutional questions. <u>Id.</u> at 1450. The court explained further that a judgment against Pierce would not directly determine or adjust the relationship of the estate to its creditors and that it could "find no clear expression of congressional intent to include within the catch-all categories of core proceedings sate claims that relate to a bankruptcy proceeding but that exist against a non-debtor." <u>Id.</u> at 1450.

Kontrabecki argues that he, as the defendant in <u>Cinematronics</u>, is a non-debtor and the state law claims against him for diluting Lehman's collateral--breach of fiduciary duty, impairment of collateral, etc--would exist independent of the bankruptcy; therefore, the state law claims against him are non-core.

Lehman and the bankruptcy judge relied on <u>In re Harris Pine Mills</u> in rejecting Kontrabecki's argument. In that case a Chapter 11 Trustee sold the furniture division of the debtor to HoPI. A couple of years later HoPI sued the Trustee in state court for fraud, negligence and negligent misrepresentation arising from the sale of the furniture division to HoPI. 44 F.3d at 1434. The Ninth Circuit held that the claims involved "core" matters:

5

"postpetition state law claims asserted by or against a trustee in bankruptcy or the trustee's agents for conduct arising out of the sale of property belonging to the bankruptcy estate qualify as core proceedings." Id. at 1437.  The court noted that the state law claims were "inextricably intertwined" with the trustee's sale of property belonging to the bankruptcy estate. Id. at 1438.

This adversary proceeding falls somewhere between Cinematronics and Harris Pine Mills. On the one hand, Kontrabecki is not the debtor and he was not a Chapter 11 Trustee. On the other hand, Lehman's claims involve Kontrabecki's disposition of the only assets of the debtor in violation of the automatic stay. Moreover, he disposed of those assets, not as part of the debtor's everyday business--as was the conduct challenged in Cinematronics–but rather for the purpose of frustrating the bankruptcy court's appointment of a trustee. Finally, when Kontrabecki acted no trustee had yet been appointed; he was in essence the trustee, the statutorily responsible person for the debtor. Thus, the Court agrees with the bankruptcy court that this case is more like Harris Pine Mills. At bottom, we have claims arising from the "responsible person's" disposition of the debtor's only assets for the apparent purpose of depriving the trustee and the secured creditor of any control of the debtor. The claims are inextricably intertwined with the responsible party's disposition of property belonging to the estate.

Even if the Court were to conclude, however, that the claims are non-core, the Court would still not grant withdrawal of the reference. The claims do not differ significantly from the admittedly core claim for violation of the automatic stay. The bankruptcy judge has already granted partial summary judgment on that core claim, ruling that Kontrabecki knowingly violated the automatic stay. The bankruptcy judge is intimately familiar with the complicated transactions involved in the claims. While the Court would have to review the bankruptcy judge's proposed findings of fact de novo rather than for clear error, it still makes the most sense for the bankruptcy court to decide the claims in the first instance.

In addition, a party must make a "timely" motion for withdrawal. Apart from Kontrabecki's claim of bias, discussed below, all of his arguments in favor of withdrawal

6

could have been made long ago, at least upon the filing of the Second Amended Complaint in June 2003. And, as is explained above, the bankruptcy court has since then taken action in the adversary proceeding, including granting Lehman's motion for partial summary judgment. Kontrabecki's motion for withdrawal is therefore untimely.

**C.     Bias**

Kontrobecki's primary argument is that the Court should withdraw the reference because of the bankruptcy judge's appearance of bias and actual bias against Kontrabecki. He contends that the bankruptcy judge has repeatedly stated that Kontrabecki has no credibility and therefore the judge cannot fairly preside over the trial. This appearance of bias is especially detrimental, he argues, given that the adversary proceeding will be tried to a judge and not a jury.

Kontrabecki relies principally on two cases. In Crown Leasing Corp. v. Johnson-Allen, 70 B.R. 350 (E.D. Pa. 1987), the defendant in an adversary proceeding moved to disqualify the bankruptcy judge. When the judge declined, the defendant appealed to the district court. The district court declined to find that the bankruptcy judge should have recused himself, and instead withdrew the reference. The grant was based on the appearance of bias stemming from the bankruptcy judge's involvement as a lawyer in litigation against the "rent-to-own" industry, of which the defendant was member. The court concluded that the judge's advocacy as a lawyer did not present the appearance of bias; however, additional evidence of the judge's personal bias against the rent-to-own industry swayed the court. First, as a panelist on a radio show the judge (then a lawyer) expressed strong personal views on the subject; he expressed those same personal views in an interview with a newspaper; indeed, he stated his hope that more consumers would bring lawsuits against the rent-to-own industry. Second, a class action lawsuit initiated by the judge (when a lawyer) was still pending, and the defendant in the case before the judge was a member of the defendant class in that lawsuit. This combination of factors led the district court to exercise its discretion to withdraw the reference.

In <u>United States v. Pfizer, Inc.</u>, 560 F.2d 319 (8th Cir. 1977), the district court judge had engaged in extensive settlement negotiations with the parties during which the judge had expressed his views on the merits of the case and damages. Even though the defendant had waived a jury trial, the court ordered a trial by jury because the trial judge, "having expressed strong opinions on the legal and factual issues of the case," should not assume a factfinding function in the trial. <u>Id.</u> at 323.

Neither case is remotely similar to this adversary proceeding. The bankruptcy judge has not expressed any personal bias against Kontrabecki or people in similar situations; rather, every statement made by the bankruptcy judge was made in the context of the proceedings before him and based on his observations of those proceedings. Nor has he expressed any view of the merits of the adversary proceeding or Lehman's damages.

The Court has reviewed each instance of the bankruptcy judge's alleged bias and finds none. In particular, the bankruptcy judge's order denying The Kontrabecki Group's motion to be relieved from the consequences of its failure to follow court deadlines was well-reasoned and measured in tone and analysis. The bankruptcy judge appropriately noted that The Kontrabecki Group's adversary proceeding faced an uphill battle because it depended upon Kontrabecki's testimony about certain oral promises that contradicted written documents. The judge observed first that "proving oral promises is always difficult in the face of a written agreement." Kontrabecki Request for Judicial Notice, Exh. 36, at 19. Next, the judge stated that the plaintiff's success was even more difficult given that Kontrabecki is a thorough man, and there is no evidence that Kontrabecki or his associates documented the alleged oral promises. <u>Id.</u> Finally, the court recounted how Kontrabecki had lied to the judge under oath during the bankruptcy proceedings and that, as a result of that misrepresentation--which would likely be admissible in the adversary proceeding--any claim depending on his credibility would have a difficult time succeeding. <u>Id.</u> at 20.

There is nothing in this Order or the record that gives this Court pause. To the contrary, the bankruptcy judge has been exceedingly patient and thorough, even issuing lengthy written orders on procedural issues. Moreover, no court has ever ruled that the

8

bankruptcy judge has ruled improperly in any of the underlying proceedings. The relief Kontrabecki seeks in the circumstances presented here is unprecedented and the Court declines his invitation to create such new precedent.

## CONCLUSION

For the foregoing reasons, the motion to withdraw the reference is DENIED.

**IT IS SO ORDERED.**

Dated: December 12, 2006

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE